IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

**WEST TENNESSEE AIR SERVICE, LLC,**

       **Plaintiff/ Counter-Defendant,**

vs.                                                          No. 1:23-cv-1132-STA-jay

**WTAS LLC, KYLE E. RICH, and MELODY
L. RICH,**

       **Defendants/Counter-Plaintiffs.**

**WTAS LLC, KYLE E. RICH, and MELODY
L. RICH,**

       **Third-Party Plaintiffs,**

vs.

**MONTE WARNE; MARIANNA WILLIAMS,
individually; MARIANNA WILLIAMS, as
TRUSTEE of the MEREDITH Z. WARNE
FAMILY TRUST; and ASHLEY & ARNOLD,
a partnership,**

       **Third-Party Defendants.**

---

**ORDER DENYING MOTION TO DISMISS OF
MARIANNA WILLIAMS INDIVIDUALLY
AND ASHLEY & ARNOLD**

---

Plaintiff West Tennessee Air Service, LLC filed this action in the Chancery Court of Dyersburg, Tennessee, asserting a claim for an alleged breach of contract by WTAS, LLC and Kyle and Melody Rich. Defendants removed the action to this Court with jurisdiction predicated on diversity of citizenship, 28 U.S.C. § 1332. They then filed a third-party complaint against Monte

Warne, the former owner of West Tennessee Air Service. (ECF No. 9.) On April 19, 2024, the Court granted Defendants/Third-Party Plaintiffs' motion to amend the third-party complaint. (ECF No. 77.) The Court allowed them to bring claims against Marianna Williams, individually; Marianna Williams, as Trustee of the Meredith Z. Warne Family Trust;[1] and Ashley & Arnold, a sole proprietorship and Williams's employer;[2] and to assert new claims against Monte Warne.

Williams and Ashley & Arnold filed a motion to dismiss the purported Amended Consolidated Counterclaim/Third-Party Complaint.[3] (ECF No. 99.) Defendants/Third-Party Plaintiffs filed a response to that motion (ECF No. 122), and Williams and Ashley & Arnold filed a reply to the response. (ECF No. 133.) On October 28, 2024, the Court struck the purported Amended Consolidated Counterclaim/Third-Party Complaint filed by Defendants/Third-Party Plaintiffs (ECF No. 82) and ordered them to comply with the original order allowing their amendment. (ECF No. 154.) Defendants/Third-Party Plaintiffs filed the operative Amended Consolidated Counterclaim/Third-Party Complaint on October 31, 2024 ("Amended Third-Party Complaint"). (ECF No. 155.)

On November 5, 2024, the Court permitted the parties to supplement their motions and responses in light of the striking of the purported Amended Consolidated Counterclaim/Third-Party Complaint and the filing of the operative Amended Third-Party Complaint. (ECF No. 161.)

---

[1] On July 23, 2024, the Court granted the motion to substitute Thomas Baker Miller as the trustee for the Meredith Z. Warne Family Trust. (ECF No. 124.)
[2] Although the third-party complaint describes Ashley & Arnold as a partnership, that entity has clarified that it is a sole proprietorship. Its status as a partnership or as a sole proprietorship is not relevant to the Court's decision on this motion.
[3] The parties agree that any claims dismissed against Williams should also be dismissed against Ashley & Arnold, as the only basis for liability of the law firm is vicarious liability through the actions of Williams.

2

Williams and Ashley & Arnold filed their supplement on November 13, 2024 (ECF No. 164), and Defendants/Third-Party Plaintiffs filed their supplement on November 29, 2024. (ECF No. 175.)

For the reasons set forth below, the motion to dismiss is **DENIED.**

Background

This dispute relates to the purchase of West Tennessee Air Service's crop-dusting business assets by Defendants/Third-Party Plaintiffs.[4] Throughout the purchase transaction, the Riches were represented by Benjamin M. Lange, counsel in Iowa, while Williams represented West Tennessee Air Services. To purchase the assets of West Tennessee Air Services, the Riches formed WTAS, LLC, a Tennessee limited liability company, with the assistance of Williams at the request of their Iowa counsel. Through this representation, they allege that Williams "undertook or created the appearance if not the fact of having undertaken a general representation of the Riches with respect to the negotiation of the [Transaction]." (Amd. 3rd Party Cmplt. ¶ 52, ECF No. 155.)[5]

The asset purchase agreement ("APA") was executed on March 31, 2021, by then trustee J. Michael Gauldin with the parties to the agreement listed as (sellers) West Tennessee Air Service, LLC, and members Monte Warne, individually, and J. Michael Gauldin, as trustee of the Meridith Z. Warne Family Trust; (buyer) WTAS LLC; (guarantors) Kyle E. Rich and Melody L. Rich. Williams became trustee on April 12, 2021. Williams was the trustee at the time this lawsuit was filed.

Defendants/Third-Party Plaintiffs paid $145,462.14 on the promissory note but stopped paying when they believed they had been fraudulently induced to purchase non-existent or minimal

---

[4] Any facts are stated for this purpose of deciding this motion only.
[5] Williams denies that a attorney-client relationship with the Riches existed with respect to the purchase transaction outside of the formation of WTAS. However, for the purposes of this motion to dismiss only, Williams accepts the allegation of an attorney-client relationship as true.

goodwill and going concern value of West Tennessee Air Service.  The alleged misrepresentations allegedly occurred between January 2021 and March 31, 2021, according to the Amended Third-Party Complaint:

> Plaintiff [West Tennessee Air Service] and Warne repeatedly represented in January 2021 through March 31, 2021 that Warne had 45 years of experience in the aerial application or crop spraying industry; that he had been running a business known as West Tennessee Ag Service for 8 years and then a second crop dusting business known as West Tennessee Air Service beginning 2019 which acquired all of the business that West Tennessee Ag Service had been doing and its assets. Warne also represented that was an owner of Merimont Aviation (named after himself and his wife) which provided all of the pilot services for West Tennessee Ag Service, "flying every acre" for the company.

(*Id.* at ¶ 52.)

On January 6, 2023, WTAS, LLC and Kyle and Melody Rich (Defendants/Third-Party Plaintiffs in this action) filed suit against West Tennessee Air Service, LLC, Monte Warne, and J. Michael Gauldin, as trustee of the Meredith Z. Warne Family Trust, in the District Court for Fayette County, Iowa.  The action was removed to the United States District Court for the Northern District of Iowa. *WTAS v. West Tennessee Air Service, LLC, et al.*, 6:23-cv-2015-CJW-MAR, (N.D. Iowa) (ECF No. 1.) Then-Defendants West Tennessee Air Service, Warne, and Trustee Gauldin moved to dismiss the action for lack of personal jurisdiction, and the Iowa Court granted the motion. *Id.*, 2023 WL 3778716, at *1 (N.D. Iowa Apr. 24, 2023). Notably, Defendant Williams was not a party to that lawsuit. Subsequently, Plaintiff filed suit in this Court for unpaid payments by Defendants/Third-Party Plaintiffs, and, as discussed above, various other parties and claims have now been added to the lawsuit.

Defendants/Third-Party Plaintiffs now allege, *inter alia*, that Williams was negligent in advising and fraudulently inducing the Riches to enter into the APA. Specifically, Williams allegedly fraudulently represented that West Tennessee Air Services had an "exclusive vendor

4

contract" with nonparty Nutrien Ag Solutions ("Nutrien"), even though no such contract existed. Additionally, Williams negligently failed to disclose the true nature of West Tennessee Air Services' relationship with Nutrien, which was allegedly a "kickback scheme" wherein West Tennessee Air Services agreed to pay Kelli Bradley $0.50 per acre for billing and collection services and then Kelli Bradley's husband, an employee for Nutrien, would refer Nutrien customers and business to West Tennessee Air Services.

Defendants/Third-Party Plaintiffs have brought claims for fraud, fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, and breach of contract against Williams and Ashley & Arnold. Williams and Ashley & Arnold have moved to dismiss the claims for legal malpractice, negligent misrepresentation, and breach of fiduciary duty as that relates to the APA[6] on the ground that they are barred by the applicable statute of limitations.

                                Standard of Review

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a plaintiff must include in its pleading "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Luis v. Zang*, 833 F.3d 619, 625–26 (6th Cir. 2016) (quoting *Kreipke v. Wayne St. Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)). When assessing the sufficiency of a complaint, the Court must view the factual allegations in the light most favorable to the plaintiff. *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). While the Court must accept all the well-pleaded factual allegations of the pleading as true, the Court need not accept legal conclusions

---

[6] Defendants/Third-Party Plaintiffs bring two causes of action for breach of fiduciary duty. At this time, Williams moves to dismiss only the claim related to the APA.

masquerading as fact claims. *Wood v. Moss*, 572 U.S. 744, 757 n.5 (2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 681; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the final analysis, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is Liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 12 motions are normally "inappropriate vehicle[s] for dismissing a claim based upon the statute of limitations," *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012), because "the statute of limitations is an affirmative defense on which a defendant bears the burden of proof, *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012), and a plaintiff has "no obligation under Rule 8 to plead compliance with the statute of limitations." *Michalak v. LVNV Funding, LLC*, 604 F. App'x 492, 493 (6th Cir. 2015). However, if "the allegations in the complaint affirmatively show that the claim is time-barred," dismissal at the pleading stage is appropriate. *Cataldo*, 676 F.3d at 547.

Analysis

Williams and Ashley & Arnold contend that the legal malpractice, breach of fiduciary duty, and negligent misrepresentation claims against them are subject to the one-year statute of limitations, codified at Tenn. Code Ann. § 28-3-104, and must be dismissed because these claims arose more than one year before the filing of the complaint against them. Section 28-3-104(c)(1) provides that "actions

6

and suits against licensed…attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort." The negligent misrepresentation claim is also subject to the one-year statute of limitations. Under Tennessee law, "actions brought by third parties against attorneys for professional negligence/negligent misrepresentation are to be considered 'malpractice' actions and fall within the statute of limitations of Tenn. Code Ann. § 28–3–104." *Hanson v. Rudnick & Wolfe*, 992 F.2d 1216, 1993 WL 100084, at \*6 (6th Cir. 1993) (citing *Security Bank & Trust Co. v. Fabricating, Inc*., 673 S.W.2d 860 (Tenn. 1983)).

The parties disagree as to whether the breach of fiduciary duty claim is also subject to the one-year statute of limitations in Tenn. Code Ann. § 28-3-104. However, given the Court's decision, that issue need not be reached at this juncture. For the purpose of deciding this motion only, the Court will assume that the one-year statute applies to the breach of fiduciary duty claim.

The parties also agree that Tennessee law provides that the accrual of a cause of action is determined by applying the discovery rule. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). "In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage — an actual injury — as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). "[A]n actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Id.*

7

> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date — whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct.

*Kohl*, 977 S.W.2d at 532-533 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)).

"For the purposes of both the discovery rule and the doctrine of fraudulent concealment, whether a plaintiff exercised reasonable care and diligence in discovering her injury is usually a fact question for the trier of fact to determine." *Coffey v. Coffey*, 578 S.W.3d 10, 22 (Tenn. Ct. App. 2018) (citing *Wyatt v. ABest, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995)). At the pleading stage, Tennessee law presumes that the "failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation." *Coffey*, 578 S.W.3d, at 23 (quoting *Hall v. DeSaussure*, 297 S.W.2d 81, 85 (1956)). The doctrine applies equally to lawyers seeking to cover up evidence of their malpractice. *Cherry v. Williams*, 36 S.W.3d 78, 85 (Tenn. Ct. App. 2000) ("Without question, an attorney's purposeful concealment from a client of facts that prevents the client from learning of an injury can toll the statute of limitations on legal malpractice.").

Applying these principles to the present case, the Court must accept the well-pleaded facts against Williams as true and draw all reasonable inferences in Defendants/Third-Party Plaintiffs' favor. s*ee Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (summarizing the motion to dismiss standard), and, thus, finds that the Amended Third-Party Complaint sufficiently alleges that Defendants/Third-Party Plaintiffs did not discover Williams's alleged malpractice or malfeasance until the time of her deposition on February 6, 2024. Accordingly, the one-year statute of limitations does not bar the claims against Williams and Ashley & Arnold that are the subject of this motion.

8

# According to Williams and Ashley & Arnold, the statute of limitations expired on January 6, 2024, more than three months before the filing of the Third-Party Complaint. As support for their argument, they point to the lawsuit filed by Defendant/Third-Party Plaintiffs in Iowa, on January 6, 2023 (ECF No. 98-2), in which they sued West Tennessee Air, Monte Warren, and J. Michael Gauldin, as trustee of the Meridith Z. Warne Family Trust. The Iowa complaint made the same or similar allegations that are the subject of the present third-party complaint. However, neither Williams nor Ashley & Arnold were parties to the Iowa litigation, and, thus, no allegations were made against them in the Iowa complaint.

Defendants/Third-Party Plaintiffs acknowledge that, by January 6, 2023, they knew that they had suffered an "actual injury" sufficient to satisfy the first element of the discovery rule. Instead, they argue that they did not know, nor should they have known, of facts sufficient to put them on notice of their claims against Williams and Ashley & Arnold until Williams's deposition. That is, they contend that they did not know until her deposition that Williams had, in part, caused their injury, which is the second element of the discovery rule.[7]

In support of their contention, they point to the following allegations in the operative third-party complaint:

> 59. Williams testified in her deposition [February 6, 2024] that she was present for an in-person conference with the Riches and Warne, during which Williams either stated or heard Warne to state to the Riches that Kelli Bradley would be paid $0.50 per acre for performing billing and collection services for the Riches.
>
> 60. Williams further admitted that when the statement regarding Kelli Bradley's services was made, she knew the arrangement was a kickback and not a bona fide transaction, that was false and a misrepresentation of the true nature and purpose of the payments to Kelli Bradley.

---

[7] Williams and Ashley & Arnold object to the references to Williams's deposition but argue that, even accepting the references as true, their motion to dismiss should be granted. (Rep. p. 2, n.2, ECF No. 133.)

9

> 61. Williams was aware that the true nature of the contractual agreement to pay Kelli Bradley $0.50 per acre was not exclusively to obtain her services of billing and collecting but rather to incentivize and maintain Kelli Bradley's husband, Wes Bradley, to continue referring Nutrien customers and Nutrien business to the Riches and WTAS. In short, a kickback scheme.
>
> 62. Williams further admits to knowing from her professional experience that "pay-for-play" was how the crop-dusting business worked in West Tennessee, and if the Riches did not pay Kelli Bradley, they would not receive work from Wes Bradley and Nutrien.
>
> 63. Williams had strong opinions of the kickback scheme and believed it to be and "offensive."
>
> 64. Williams had a fiduciary duty to explain the true nature of the kickback scheme to the Riches.
>
> 65. Despite believing the kickback scheme to be "offensive" and a plan that she would not participate in and despite having a fiduciary duty to tell the Riches about the scheme, she admits that she did not tell the Riches.
>
> 66. Williams wrongfully failed to explain the true nature of the kick back to the Riches. But for Williams' breach of her fiduciary duty by failing to advise the Riches of the kickback scheme, the Riches would not have executed the Asset Purchase Agreement including the related documents.

(Amd. 3rd Party Cmplt., ECF No. 155.)[8]

Williams and Ashley & Arnold respond that, as to the second element of the discovery rule, the Iowa Litigation demonstrates that the Riches knew, or should have known, by January 6, 2023, that their alleged injuries were sustained as a result, in part, of Williams's alleged negligence. They reason that merely by virtue of her role as the Riches' attorney Defendants/Third Party Plaintiffs should have known that she was aware of the alleged fraud by Warne and West Tennessee Air Services. However, they point to nothing in the operative Amended Third-Party Complaint or in any other part of the record to show that Defendants/Third-Party Plaintiffs did, in fact know or should

---

[8] These allegations are merely some of those made against Williams and Ashely & Arnold in the operative Amended Third-Party Complaint.

have know of her alleged misdeeds. The Court agrees with Defendants/Third-Party Plaintiffs that it cannot presume that a lawyer's knowledge is coextensive with her client's knowledge. At a minimum, the statute of limitations issue in this case depends on disputed questions of fact that the Court cannot resolve at this stage of the litigation.

"A statute of limitations defense, while not normally part of a motion to dismiss for failure to state a claim, 'is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely.'" *Divine v. Genuine Parts Co.*, 2016 WL 1558376, at *1 (E.D. Ky. Apr. 15, 2016) (quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008)). The present motion to dismiss does not meet this standard. Because the Court must construe the complaint in the light most favorable to Defendants/Third-Party Plaintiffs and draw all reasonable inferences in their favor, the Court must reject the statute of limitations defense for now. *See Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021). Accordingly, the motion to dismiss is **DENIED**.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  March 31, 2025