IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

**WEST TENNESSEE AIR SERVICE, LLC,**

       Plaintiff/ Counter-Defendant,

vs.                        No. 1:23-cv-1132-STA-jay

**WTAS LLC, KYLE E. RICH, and MELODY L. RICH,**

       Defendants/Counter-Plaintiffs.

**WTAS LLC, KYLE E. RICH, and MELODY L. RICH,**

       Third-Party Plaintiffs,

vs.

**MONTE WARNE; MARIANNA WILLIAMS, individually; MARIANNA WILLIAMS, as TRUSTEE of the MEREDITH Z. WARNE FAMILY TRUST; and ASHLEY & ARNOLD, a partnership,**

       Third-Party Defendants.

---

**ORDER GRANTING MOTION TO DISMISS OF
THOMAS BAKER MILLER,
TRUSTEE OF THE MEREDITH Z. WARNE FAMILY TRUST**

---

Plaintiff West Tennessee Air Service, LLC filed this action in the Chancery Court of Dyersburg, Tennessee, asserting a claim for an alleged breach of contract by Defendants WTAS, LLC and Kyle and Melody Rich. On July 7, 2023, Defendants removed the action to this Court with jurisdiction predicated on diversity of citizenship, 28 U.S.C. § 1332, and they also filed a

third-party complaint against Monte Warne, the former owner of West Tennessee Air Service.[1] (ECF No. 9.) On April 19, 2024, the Court granted Defendants/Third-Party Plaintiffs' motion to amend the third-party complaint. (ECF No. 77.) The Court allowed Defendants/Third-Party Plaintiffs to bring claims against Marianna Williams, individually; Marianna Williams, as Trustee of the Meredith Z. Warne Family Trust;[2] and Ashley & Arnold, a sole proprietorship and Williams's employer,[3] and to assert new claims against Monte Warne. On July 23, 2024, the Court granted the motion to substitute Thomas Baker Miller as the trustee for the Meredith Z. Warne Family Trust. (ECF No. 124.)

On October 28, 2024, the Court struck the purported Consolidated Amended Counterclaim and Third-Party Complaint filed by Defendants/Third-Party Plaintiffs (ECF No. 82) and ordered them to comply with the original order allowing their amendment. (ECF No. 154.) Defendants/Third-Party Plaintiffs then filed the operative Consolidated Amended Counterclaim/Third-Party Complaint. (ECF No. 155.)

Thomas Baker Miller, as trustee for the Meredith Z. Warne Family Trust, filed a motion to dismiss the purported Consolidated Amended Counterclaim/Third-Party Complaint on May 30, 2024. The motion was filed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.[4] (ECF No. 113.) Defendants/Third-Party Plaintiffs filed a response to that motion (ECF No. 131), and Trustee Miller filed a reply to the response. (ECF No. 141.) On November 5, 2024, the Court permitted the parties to supplement their motions and responses in

---

[1] Plaintiff's motion to remand was denied on November 17, 2023. (ECF No. 37.)
[2] The Court agrees that the Trustee rather than the Trust is the proper party to be sued.
[3] Although the third-party complaint describes Ashley & Arnold as a partnership, that entity has clarified that it is a sole proprietorship. Its status as a partnership or as a sole proprietorship is not relevant to the Court's decision on this motion.
[4] Marianna Williams and Arnold & Arnold have also filed a motion to dismiss. (ECF No. 98.) That motion is the subject of another order.

2

light of the striking of the purported Consolidated Amended Counterclaim/Third-Party Complaint and the filing of the operative Amended Consolidated Counterclaim/Third-Party Complaint. (ECF No. 161.) Trustee Miller filed his supplement on November 15, 2024 (ECF No. 168), and Defendants/Third-Party Plaintiffs filed their supplement on November 29, 2024. (ECF No. 175.)

For the reasons set forth below, Trustee Miller's motion to dismiss is **GRANTED**.

Background

This dispute relates to the purchase of West Tennessee Air Service's crop-dusting business assets by Defendants/Third-Party Plaintiffs. On March 31, 2021, West Tennessee Air Service and Monte Warne executed an asset purchase agreement in order for Defendants/Third-Party Plaintiffs to acquire the assets of West Tennessee Air Service. Defendants/Third-Party Plaintiffs paid $145,462.14 on the promissory note but stopped paying when they ostensibly believed they had been fraudulently induced to purchase non-existent or minimal goodwill and going concern value of West Tennessee Air Service. The alleged misrepresentations allegedly occurred between January 2021 and March 31, 2021, according to the operative Amended Consolidated Counterclaim/Third-Party Complaint:

> 32. Plaintiff [West Tennessee Air Service] and Warne repeatedly represented in January 2021 through March 31, 2021 that Warne had 45 years of experience in the aerial application or crop spraying industry; that he had been running a business known as West Tennessee Ag Service for 8 years and then a second crop dusting business known as West Tennessee Air Service beginning 2019 which acquired all of the business that West Tennessee Ag Service had been doing and its assets. Warne also represented that was an owner of Merimont Aviation (named after himself and his wife) which provided all of the pilot services for West Tennessee Ag Service, "flying every acre" for the company.
> …
> 34. Plaintiff and Warne represented in writing the gross crop dusting/aerial application revenues that West Tennessee Ag Services for the years 2016 through 2019 were approximately $2,885,000 and assured the Riches that they could count on Warne's calculations and the calculations of Merimont Aviation in this regard to be "100%" correct. Upon information and belief, that representation was false and fraudulent or a negligent misrepresentation in furtherance of fraudulently

3

> inducing the Riches and WTAS to purchase the assets of West Tennessee Air Service and execute the Asset Purchase Agreement.
> …
> 36. Plaintiff and Warne also represented that they had an extensive customer base who hired him and Plaintiff to perform aerial application services for approximately 70,000 acres. These representations were false and fraudulent or a negligent misrepresentation. Plaintiff and Warne represented or promised the Riches that the Riches would be able to operate a successful aerial application and crop spraying business because of the goodwill, reputation, customer base and size, and previous success of Plaintiff.
>
> 37. Plaintiff and Warne represented to the Riches that they would acquire Plaintiff's customers, accounts, connections, goodwill and going concern value.

(¶ 32, 34, 36, 37, ECF No. 155 (footnote omitted).)

On January 6, 2023, WTAS, LLC and Kyle and Melody Rich (Defendants/Third-Party Plaintiffs in this action) filed suit against West Tennessee Air Service, LLC, Monte Warne, and J. Michael Gauldin, as trustee of the Meredith Z. Warne Family Trust, in the District Court for Fayette County, Iowa. The action was removed to the United States District Court for the Northern District of Iowa. *WTAS v. West Tennessee Air Service, LLC, et al.*, 6:23-cv-2015-CJW-MAR, (N.D. Iowa) (ECF No. 1.) Then-Defendants West Tennessee Air Service, Warne, and Trustee Gauldin moved to dismiss the action for lack of personal jurisdiction, and the Court granted the motion. *Id.*, 2023 WL 3778716, at *1 (N.D. Iowa Apr. 24, 2023). Subsequently, Plaintiff filed suit in this Court for payments unpaid by Defendants/Third-Party Plaintiffs, and, as discussed above, various other parties and claims have now been added to the lawsuit.

The Asset Purchase Agreement giving rise to this lawsuit was signed on March 31, 2021, by then trustee J. Michael Gauldin with the parties to the Agreement listed as (sellers) West Tennessee Air Service, LLC, and members Monte Warne, individually, and J. Michael Gauldin, as trustee of the Meridith Z. Warne Family Trust; (buyer) WTAS LLC; (guarantors) Kyle E. Rich and Melody L. Rich. Williams became trustee on April 12, 2021. Williams was the trustee at the

4

time this lawsuit was filed. As noted above, on July 23, 2024, the Court granted the motion to substitute Thomas Baker Miller as the trustee.

The allegations as to the Trust and Trustee are as follows:

> 115. Williams is liable as Trustee of the Trust, which is the 99% member of Plaintiff, for the statements and misrepresentations made of which the Trustee had knowledge.
> …
> 124. Williams is liable as Trustee of the Trust, which is the 99% member of Plaintiff, for the fraudulent statements and misrepresentations made of which the Trustee had knowledge.
> …
> 134. Williams is liable as Trustee of the Trust, which is the 99% member of Plaintiff, for the breaches of contract by Plaintiff.
> …
> 149. Williams is liable as Trustee of the Trust, which is the 99% member of Plaintiff, for the breaches of the TCPA [Tennessee Consumer Protection Act, codified at Tenn. Code Ann. § 47-18-101 *et seq.*] of which she had knowledge and in which she participated.
> …
> 186. Williams breached professional duties that she owed to the Riches and WTAS, including but not limited to: ….
>> (e) Duty to not acquire a pecuniary interest adverse to a client, which Williams acquired when she became Trustee of the Trust which is the 99% member of West Tennessee Air Service, that is the Plaintiff herein….

(¶¶ 115, 124, 134, 149, 186(e), ECF No. 155.) The prayer for relief states that "[t]he Trust is liable as the 99% member of Plaintiff, by and through the Trustee for all damages of which Plaintiff is liable." (*Id.* p. 35.)

No allegations are made as to any misconduct by the Trust itself or misconduct by Williams in her role as trustee. Instead, the allegations are made against Plaintiff West Tennessee Air Service, Warne, and Williams in her role as an attorney during the transactions. ("Had Plaintiff, Warne and Williams disclosed the information they concealed, the Riches and WTAS would not have executed the Asset Purchase Agreement for $1.8 million.") (¶ 126, ECF No. 155.) The

5

allegations concerning the Trust are merely that Williams, as trustee, is liable because the Trust is the 99% member of Plaintiff.

The issues before the Court are whether Miller, as a successor trustee, can be held directly liable for Warne and West Tennessee Air Service's alleged fraud or indirectly liable through veil-piercing.[5] Trustee Miller has specifically moved to dismiss on the grounds that (1) the Trust is only a member of West Tennessee Air Service, an LLC, thus, he and the Trust can have no liability for West Tennessee Air Service's conduct by statute, (2) the Trustee committed no fraud, (3) the Trustee is not a party to the contract, (4) no claims are asserted against the Trustee individually, (5) fraud is not pled with particularity, and (6) the TCPA claim is time-barred.

## Standard of Review

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a plaintiff must include in its pleading "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Luis v. Zang*, 833 F.3d 619, 625–26 (6th Cir. 2016) (quoting *Kreipke v. Wayne St. Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)). When assessing the sufficiency of a complaint, the Court must view the factual allegations in the light most favorable to the plaintiff. *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). While the Court must accept all the well-pleaded factual allegations of the pleading as true, the Court need not accept legal conclusions

---

[5] Defendants/Third-Party Plaintiffs contend that Trustee Miller has "conceded" in his motion that they have stated a claim against Warne, West Tennessee Air Service, and Williams. (Resp. p. 2, ECF No. 131.) The Court does not view any statements in the motion as a "concession" concerning allegations against other parties. Instead, the motion is directed at allegations against Trustee Miller.

masquerading as fact claims. *Wood v. Moss*, 572 U.S. 744, 757 n.5 (2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 681; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the final analysis, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is Liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Additionally, Rule 9 of the Federal Rules of Civil Procedure requires that any claims of fraud be pled with particularity. "When faced with a motion to dismiss for failure to plead fraud 'with particularity' as required by Rule 9(b) ..., 'a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.'" *Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) (quoting *Michaels*, 848 F.2d at 679). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud." from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (quotation

7

marks omitted). "So long as [the plaintiff] pleads sufficient detail — in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud — to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

<u>Analysis</u>

Trustee Miller correctly notes that neither he nor the Trust itself can be held liable for any actions taken by Williams in her role as an attorney (as opposed to Trustee) – specifically the allegation in paragraph 186(e) that "Williams breached professional duties that she owed to the Riches and WTAS, including but not limited to: …. Duty to not acquire a pecuniary interest adverse to a client, which Williams acquired when she became Trustee of the Trust." Any professional negligence claims against Williams are claims against her individually and not in her role as trustee or against the Trust itself. To the extent that these claims are now made against Trustee Miller in his role as substitute trustee the claims are dismissed.

The same reasoning applies to the claim in paragraph 149 that Williams is liable as Trustee for the breach of the TCPA of which **she** had knowledge and in which **she** participated (emphasis added). Miller, as substitute trustee, cannot be held liable for the actions or inactions that Williams took individually or in her role as an attorney. This reasoning is supported by the allegation in paragraph 57 that the "Riches believed Williams to be giving them advice and counsel in her capacity as their lawyer."

Moreover, Williams became the trustee on April 12, 2021, after the execution of the Asset Purchase Agreement. The allegations against Williams occurred prior to her appointment. Thus, no actions or inactions of Williams prior to April 12, 2021, including the execution of the Agreement, can be attributed to Trustee Miller, as substitute trustee, or to the Trust itself.

8

Furthermore, there are no allegations of misconduct against J. Michael Gauldin, the trustee prior to Williams and one of the signatories of the Agreement.

As for the remaining claims, Defendants/Third-Party Plaintiffs allege that Williams as trustee is liable for the statements and misrepresentations made of which the Trustee had knowledge, whether fraudulent or otherwise, and that she is liable as trustee for any breach of contract by Plaintiff. Trustee Miller argues that Defendants/Third-Party Plaintiffs cannot assert liability against him in his role as substitute trustee (and previously against Williams in that role) or against the Trust based on the Trust's status as a member of an LLC. In support of his argument, he relies on the Tennessee Revised Limited Liability Company Act which states:

> A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC.

Tenn. Code Ann. §48-249-114(a)(1)(B).

To the extent that Defendants/Third-Party Plaintiffs are attempting to assert liability against the Trustee based on the status of the Trust as a member of a limited liability company, they are prohibited to do so by statute, and those claims must be dismissed. For example, it is alleged that "Williams is liable as Trustee of the Trust, which is the 99% member of Plaintiff [West Tennessee Air Service, LLC], for the statements and misrepresentations made of which the Trustee had knowledge." (¶¶ 115, 124, 134, 149, ECF No. 115.) Trustee Miller cannot be held liable for such claims without some allegation of fraud on his part, and Defendants/Third-Party Plaintiffs have not sufficiently alleged fraudulent actions by either the Trustee or the Trust.

Defendants/Third-Party Plaintiffs have responded that the Trustee can be held liable for the fraudulent conduct of West Tennessee Air Service even absent any fraudulent conduct by the Trustee. In support of their argument, they point to the alleged fraudulent statements made by

9

Warne and urge the Court to pierce the corporate veil to find the Trustee and Trust liable for Warne's statements. According to Defendants/Third-Party Plaintiffs, they are proceeding under the theory that "allows for LLC members to be sued for the debts of the LLC 'upon a showing that [the LLC] is a sham or a dummy or where necessary to accomplish justice.' *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (citation omitted)." (Supp. p. 12, ECF No. 175.)

In Tennessee "the principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity." *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675 (6th Cir. 2006) (internal quotations and alterations omitted). Thus, "the party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief." *Id.* (internal quotations and alterations omitted).

The problem for Defendants/Third-Party Plaintiffs is that they did not plead sufficient facts to show that the corporate veil should be pierced. Granted, they allege misrepresentations by Warne, but they did not allege any facts which, if proven, would show that the Trust was a "sham or dummy." The Amended Counterclaim/Third-Party Complaint makes no reference to piercing the corporate veil, disregarding the corporate form, establishing the Trust as the alter-ego of West Tennessee Air Service, or any other facts to support the theory that the form of West Tennessee Air Service should be disregarded. Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This requirement is "intended to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In this case, Trustee Miller was not put on notice by anything in the Amended Counterclaim/Third-Party

10

Complaint, factual allegations or otherwise, that Defendants/Third-Party Plaintiffs were attempting to pierce the corporate veil.

The Court in *Craftco Hardwood Floors, Inc. v. Custom Kilns, Inc.*, 2007 WL 9710068 (W.D. Tenn. Mar. 8, 2007), considered whether the plaintiff had sufficiently pled fraud by the defendant sufficient to pierce the corporate veil and found that it had not.

> Next, the question is whether Plaintiff has properly alleged fraud by Custom Kilns. Plaintiff alleges, as part of its breach of contract claim against Custom Kilns, only that "[u]pon information and belief, [the Plass Defendants] ... are the alter ego of Custom Kilns." (Compl. ¶¶ 3-4; *see also id*. ¶ 20 ("Custom Kilns, Vernon Plass, and Patrick Plass, are liable to Craftco for any ... damages allowed by law for Craftco's breach of contract [sic].... Craftco is therefore entitled to a judgment ... against Custom Kilns, Vernon Plass, Patrick Plass, and Lila Plass....").)
>
> However, "these conclusory allegations, couched in terms of a contractual breach, are not tantamount to the fraud or injustice required to pierce the corporate veil.... [T]he injustice must be more than the breach of contract alleged in the complaint." *Se. Tex. Inns*, 462 F.3d at 679 (internal quotations omitted). Specifically, Plaintiff "does not plead with specificity that [Custom Kilns] sanction[ed] a fraud, injustice, or equivalent misfeasance. Viewing this case from its proper perspective — a consensual contractual agreement between sophisticated parties — [the Court is] not persuaded that [Plaintiff] has pleaded extraordinary circumstances that justify piercing [the] corporate veil." *Id.* Indeed, "[w]hen a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)," *id.* at 672, which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

*Id.* at *2 (W.D. Tenn. Mar. 8, 2007).

Here, as in *Se. Texas Inns, Inc. v. Prime Hosp. Corp.*, Defendants/Third-Party Plaintiffs have not alleged that West Tennessee Air Services, the Trustee, or the Trust were "involved in an elaborate shell game or [was] otherwise abusing the corporate form to effect a fraud." 462 F.3d at 680 (citation omitted). Moreover, there is no averment that "the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." *Id.* (citation omitted). Thus, the Court finds that Defendants/Third-Party Plaintiffs have failed to sufficiently allege facts that, if proved, would

11

allow the corporate veil to be pierced, and the claims against Trustee Miller must be dismissed.

Accordingly, Trustee Miller's motion to dismiss is **GRANTED**.[6]

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

                                        Date:  March 31, 2025.

---

[6] Because of this determination, there is no need for the Court to decide whether the TCPA claim is barred by the applicable statute of limitations.